Filed 9/28/20  P. v. Diaz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071215 |
| v. | (Super.Ct.No. SWF1302275) |
| RAFAEL RODRIGUEZ DIAZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elaine M. Kiefer, Judge. Affirmed in part, reversed in part, and remanded with directions.

Torres & Torres and Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

After absconding from parole supervision, defendant and appellant Rafael Rodriguez Diaz fled from police on three separate occasions to avoid arrest.  According

1

to the prosecution, the third of these chases culminated in Diaz firing two shots from a handgun at a police officer. The officer was not injured, but Diaz was hit three times when police returned fire. Diaz was tried and convicted on a number of charges and enhancements, and sentenced to a total of 64 years four months to life in prison.

Diaz argues here that (1) he received ineffective assistance of counsel when his attorney failed to request a mistrial in response to certain testimony by a police expert; (2) pursuant to Penal Code[1] section 654, the trial court should have suspended his punishment for felony evading (count 8), a six-year term, as well as enhancements of that count totaling 12 years; (3) the trial court miscalculated his presentence custody credits; (4) the trial court failed to consider his ability to pay various imposed fines and fees, in violation of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*); (5) he is entitled to resentencing under the newly enacted Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393); and (6) he is entitled to resentencing under the newly enacted Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136). The People concede the last of these issues.

We decline to consider Diaz's ineffective assistance claim, finding it more appropriately considered on a record developed in a habeas corpus proceeding. We reject Diaz's contention that section 654 applies to his punishment for felony evading. We agree with the parties, however, that the matter must be remanded; the post sentencing

---

[1] Further undesignated statutory references are to the Penal Code.

2

changes to the law, along with certain trial court errors in the initial sentence, require Diaz to be resentenced.

## I.  BACKGROUND

Diaz's current charges arise from three separate incidents.  First, on August 6, 2013, Diaz fled on foot from a sheriff's deputy on patrol.  The deputy had spotted Diaz standing outside a gold Honda Civic and recognized him as a wanted parolee at large. Diaz successfully evaded arrest.  The deputy searched the car he left behind and found, among other things, Diaz's identification card and a loaded handgun.  The gun was later determined to have been stolen.

On August 19, 2013, the same sheriff's deputy spotted Diaz driving the same gold Honda.  Before the deputy had caught up with Diaz, Diaz pulled into a parking lot, slowed almost to a stop, and a female passenger rolled out of the car.  A high speed chase then ensued, with Hemet police taking over the pursuit.  Diaz was apprehended about 21 minutes and 18 miles later, after his car broke down.  Police discovered a box of ammunition in the trunk of the car.

In the wee hours of the morning on January 24, 2014, a Hemet police officer noticed a white Honda Civic driving strangely.  A license plate check led the officer to suspect the car was stolen, because it came back as belonging to a "recently recovered stolen vehicle."  When the officer pulled up next to the car at a stop sign, the driver turned his body away and put his head down, which the officer interpreted as an attempt

to hide his face. The officer initiated a traffic stop after noting the car had a modified exhaust and observing it roll through a stop sign.

The car pulled over briefly, but then sped away after the officer came to a stop and opened his door. After a high speed chase, the officer temporarily lost sight of the vehicle, but then spotted sparks in the distance. The officer believed the sparks were from the fleeing car bottoming out as it went over dips in the road at high speed. The officer discovered he was correct when he caught up to the car, which had come to a stop at an angle to the curb on the opposite side of the street. Diaz would testify at trial that he had lost control of the car and slid into the curb, at which point the car stalled and would not restart.

From the way the car was stopped, the officer believed that the driver had probably already fled on foot, since he had a "pretty good lead on us, several seconds." The officer therefore pulled up alongside the car, planning to pass it and pull onto a side street to start setting up a perimeter. As he did so, he stopped and shined a spotlight into the car, and was surprised to see the driver still sitting in the car.

The officer opened his door and stepped out of his car. As he did so, from a distance of 10 or 15 feet, he saw the driver fumbling with something in the center console of the car, and then pointing a revolver at him. The officer dove backwards. As he did so he heard gunfire. This all happened, according to the officer, "probably all within the same second. It was very, very fast." It was later determined that Diaz fired the revolver—a .357 Magnum—twice, but the officer was not hit. The officer returned fire,

4

as did two other officers who arrived on scene. Diaz was shot three times. After a standoff of about 17 minutes, Diaz surrendered and was taken into custody.

Diaz was charged with nine counts, including: two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1), counts 1, 9), one count of being a felon in possession of a loaded firearm in a public place (§ 25850, subd. (c)(1), count 2); a misdemeanor count of evading a police officer (§ 148, subd. (a)(1), count 3); two counts of fleeing a pursuing officer with willful and wanton disregard for safety (Veh. Code, § 2800.2, counts 4 & 8); one count of being a felon in possession of ammunition (§ 30305, count 5); one count of attempted murder of a peace officer (§§ 664, subd. (e), 187, subd. (a), count 6); and one count of assault with a firearm (§ 245, subd. (d)(1), count 7). Counts 1 through 3 were alleged to have been committed on August 6, 2013, counts 4 and 5—on August 19, 2013, counts 6 through 9—on January 24, 2014.

The information also alleged a number of firearms and recidivism based enhancements. The firearms enhancements included, as to count 6, that Diaz personally discharged a firearm (§§ 12022.53, subd. (c), 1192.7, subd. (c)(8)), and as to counts 7 and 8, that Diaz personally used a firearm during the commission of the crimes (§§ 12022.5, subd. (a), 1192.7, subd. (c)(8)). As to counts 6 through 9, the information alleged that Diaz had committed the crimes while on bail (§ 12022.1). The information further alleged that Diaz had one strike prior (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)), one serious felony prior (§ 667, subd. (a)), and three prison priors (§ 667.5, subd. (b)).

The jury found Diaz guilty as charged, and Diaz admitted his prior convictions. The trial court imposed a sentence including the following consecutive terms: as to count 6, a term of seven years to life, doubled to 14 years to life by the strike prior conviction, plus a 20-year term for the firearms enhancement; four terms of one year four months, for counts 1, 4, 5, and 9; as to count 8, a six-year term, plus 10 years for the firearms enhancement and two years for the on-bail enhancement; five years for the serious felony prior; and two one-year terms, for two of the prison priors (the third was stricken).[2] The trial court initially calculated this sentence to add up to 54 years four months to life. On a later date, it corrected this mathematical error, imposing the same terms, but correctly describing the total as 64 years four months to life.

The trial court also imposed various mandatory fines and fees, including a $2,500 restitution fine, a $360 court operations assessment, and a $270 conviction assessment.[3]

## II. DISCUSSION

A. *Ineffective Assistance of Counsel*

Diaz contends that his trial counsel provided ineffective assistance of counsel by failing to request a mistrial in response to certain testimony by a prosecution expert. We

---

[2] The court imposed stayed or concurrent sentences on the remaining counts and enhancements.

[3] The minutes of the sentencing hearing and the abstract of judgment erroneously describe the restitution fine to be $2550. The trial court's oral pronouncement of judgment, stating that the court "will impose a $2500 restitution fine," is controlling. (See, e.g., *People v. Harrison* (2005) 35 Cal.4th 208, 226.)

decline to reach the merits of this argument, which is more appropriately considered on an evidentiary record developed in a habeas corpus proceeding.

### 1. *Additional Background*

At trial, Diaz testified in his own defense. He insisted that his intentions on January 24, 2014 were suicidal, not homicidal, stating "I don't hurt cops. I run from them," and denying that he ever had any intention of killing anyone other than himself. According to Diaz, he had just put the gun to his own head when he saw the officer was coming. At the last moment, he lost his nerve and pulled the gun away. He stated that he did not remember shooting a second time, though he conceded that it was possible that he did.

After the January 2014 incident, forensic examination of Diaz's car revealed a bullet hole in the windshield that appeared to have originated from the inside of the car, based on visible powder burns on the adjacent pillar and the way the glass had broken.

During the prosecution's case-in-chief, the prosecutor informed the court that he intended to elicit testimony from a police detective, opining that the burn patterns around the hole created by the bullet exiting the car showed the shot was fired from about a foot away. Such testimony would tend to show that Diaz was holding the gun with his arm outstretched when the shot was fired, rather than close to his own head. The defense objected to the testimony. After a hearing pursuant to Evidence Code section 402, the trial court excluded the testimony, both because the detective's opinion was untimely disclosed to the defense, and because the detective "was not familiar with the burn

7

pattern of a .357 Magnum, which is the type of weapon that was used in this case." The detective was permitted to testify generally about how burn marks can appear, including that the closer a gun is fired to an object the smaller the burn pattern will be. The court specified, however, that the detective "is not, under any circumstances, to render an opinion about feet or distance, you know, exact distances."

During the detective's testimony, he was asked by the prosecutor: "At the range, is there anything specific that you have done in your training at the range that has shown you powder burns and how close you need to be for them to kind of demonstrate or show up on an item?" The detective responded: "Yes. So we qualify with our weapons quarterly. So every quarter, part of the qualification process is within an arm's length. When we simulate—we're taking notes or whatever on our notebook. When we simulate, we have to pull our gun and fire a round. That is very much a close-contact shot within a foot. And I can tell you that can leave marks on the target." The detective later testified that burns are not visible from shots taken from about three feet away.

Under questioning by defense counsel, the detective admitted that his testimony about specific distances related to his own weapon, which is not a .357 Magnum. The detective conceded that he did not know how close one had to be to leave a powder burn on a paper target with a .357 Magnum.

On the defense's motion, the trial court struck the detective's testimony in its entirety, and instructed the jury to disregard it. Defense counsel did not request a mistrial.

8

2. *Analysis*

Diaz argues that his trial counsel's successful motion to strike did not obviate the need to also request a mistrial, asserting that "the bell was already rung, and this devastating testimony eviscerated appellant's defense that he was trying to commit suicide not put his arm straight out and shoot at the police officer." In his view, his trial counsel's failure to request a mistrial amounted to ineffective assistance of counsel.

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) On direct appeal, a conviction will be reversed for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

Here, the record is silent as to why Diaz's trial counsel did not move for a mistrial in addition to or instead of requesting that the detective's testimony be stricken from the record. It is possible that the failure was for some unsatisfactory reason, for example, if trial counsel failed to consider the possibility of requesting a mistrial. But it is also

9

possible that he had sound reasons not to pursue the issue.  For example, perhaps he reasonably believed that the jury was capable of following the court's instruction to disregard the detective's testimony, or reasonably viewed the detective's testimony to be less "devastating" than Diaz's appellate counsel asserts here.  Accordingly, we find it would be inappropriate to decide the merits of Diaz's ineffective assistance claim here.  The issue is more appropriately considered in a habeas corpus proceeding.

B.  *Senate Bill 136*

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.)  Effective January 1, 2010, Senate Bill 136 amended section 667.5, subdivision (b), to limit its prior prison term enhancement to only prior prison terms for certain sexually violent offenses. (§ 667.5, subd. (b).)

The parties agree that none of Diaz's prior prison terms were for a sexually violent offense.  The parties also agree that the amendments enacted by Senate Bill 136 apply retroactively to any case in which the judgment is not yet final on Senate Bill 136's effective date.  (See *People v. Jennings, supra*, 42 Cal.App.5th at p. 682.)  We agree with the parties on both of these issues.  The two section 667.5 enhancements found true and imposed against Diaz, therefore, must be stricken.

Because the trial court did not previously sentence Diaz to the maximum possible sentence, the trial court could exercise its discretion to reassess Diaz's total sentence on remand, though it may not sentence him to a term in excess of the original. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"]; *People v. Burns* (1984) 158 Cal.App.3d 1178, 1184 [trial court entitled to reconsider entire sentencing scheme on remand, but may not sentence defendant to term in excess of original].) We therefore will remand the matter with instructions to strike the prison priors and resentence Diaz accordingly.

C. *Multiple Punishments*

Diaz's sentence includes a sentence of 14 years to life for the substantive charge of attempted murder (count 6), plus a 20-year term for the firearms enhancement of that count (§ 12022.53, subd. (c)). It also includes a term of six years for felony evading (count 8), plus 10 years for the firearms enhancement (§ 12022.5, subd. (a)) and two years for the on-bail enhancement (§ 12022.1) of that count. Diaz argues that punishment for count 8 and its enhancements must be stayed pursuant to section 654, because "the evading punished in count 8 was continuing, and the attempted murder was part and parcel of that evasion." The People concede that punishment for the firearms enhancement of count 8 must be stayed, but otherwise disagree. We agree with the People's conclusion.

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "'Few if any crimes, however, are the result of a single physical act. "Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." [Citation.]'" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*People v. Latimer*, *supra*, 5 Cal.4th at p. 1208.) "[T]he question of whether defendant harbored a 'single intent' within the meaning of section 654 is generally a factual one . . . ." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)

Substantial evidence supports the conclusion that, when Diaz fired his gun at the officer, he no longer was acting out of the singular intent of evading arrest. After his car became disabled, he had time to flee on foot, as he had on at least one previous occasion.

He chose not to do so. A reasonable inference, albeit not the only one, is that Diaz had developed the separate intention of confronting the pursuing officer, either before continuing his attempt to escape or otherwise. On this record, we may not disturb the trial court's determination that section 654 did not apply to require punishment for the escape charge to be stayed.

Nevertheless, as the People concede, the trial court did erroneously impose multiple punishment in a different respect.[4] The firearms enhancement of count 6 and the firearms enhancement of count 8 both relate to the same act of firing the gun at the pursuing officer; there was no evidence Diaz used the gun in any other manner during the chase. It is inappropriate to enhance Diaz's sentence with two firearms enhancements for the same, single use of the gun, so the lesser of the two enhancements, the one for count 8, must be stayed.

We note that the exact statutory basis for staying the enhancement for count 8 may be debatable, though the conclusion is not. The People propose that the firearms enhancement of count 8 must be stayed pursuant to section 12022.53, subdivision (f), which states that a section 12022.5 enhancement "'shall not be imposed on a person in addition to an enhancement imposed pursuant to this section. '" But in *People v. Palacios* (2007) 41 Cal.4th 720, 727, 731, the Supreme Court found significance in the fact that section 654 uses the terminology "act or omission," and thus "prohibits multiple

---

[4] Indeed, this is an argument that the People raised first, in their briefing on appeal. Diaz joined in the People's argument in his reply brief as an alternative to his own position that all punishment for count 8 should be stayed.

punishment per *act*," in contrast to section 12022.53, which "do[es] so per *crime*." Nevertheless, if section 12022.53, subdivision (f) does not apply to bar multiple punishment here, section 654 certainly does. (See *People v. Ahmed* (2011) 53 Cal.4th 156, 159-160 [§ 654 applies to enhancements when more specific statutes "do not provide the answer"].)

We trust that in resentencing Diaz, the trial court will stay punishment for the firearms enhancement of count 8 if punishment for the firearms enhancement of count 6 is again imposed.[5]

D. *Senate Bill 1393*

Diaz contends that he is entitled to a remand so he can be resentenced in light of Senate Bill 1393. The People do not concede that the Senate Bill 1393 issue alone would justify remand but, acknowledging that they have conceded remand is appropriate for another reason, express no objection to remanding the Senate Bill 1393 issue as well. We agree that remand is appropriate.

Effective January 1, 2019, Senate Bill 1393 amended sections 667, subdivision (a), and 1385, subdivision (b), to allow a court in its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1-2.) Under the versions of these statutes in effect when the trial court sentenced Diaz, the court was

---

[5] The trial court could instead choose to strike the section 12022.53, subdivision (a) enhancement. (See § 12022.53, subd. (h) ["The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law"].)

14

required to impose a five-year consecutive term for "[a]ny person convicted of a serious felony who previously has been convicted of a serious felony" (former § 667, subd. (a)), and the court had no discretion "to strike any prior conviction of a serous felony for purposes of enhancement of a sentence under Section 667." (Former § 1385, subd. (b).)

The People concede that the changes to the law enacted by Senate Bill 1393 apply to judgments, like the one in this case, which where not final on January 1, 2019, when Senate Bill 1393 went into effect. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 973.) They contend that the record demonstrates that the trial court would not have struck the punishment for Diaz's prior serious felony enhancement, so remand would be unnecessary, taking the issue in isolation. Since the matter is already being remanded for another reason, however, the People "do[] not object to remanding to address Senate Bill 1393 as well."

We accept the People's concession, and decline to speculate how the trial court would have exercised its discretion if Senate Bill 1393 had been effective at the time of sentencing. We offer no opinion about how it should do so on remand.

E. *Presentence Custody Credits*

Diaz was initially sentenced on August 31, 2018. The trial court corrected its mathematical error regarding Diaz's total sentence on September 7, 2018. When it did so, it did not adjust Diaz's presentence custody credits to reflect the time period between August 31 and September 7, 2018. The parties dispute whether it should have done so.

15

This dispute is moot, since the matter must be remanded for resentencing in any case, and thus recalculation of Diaz's presentence custody credits based on the new sentencing date. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 41.) We therefore need not and do not decide the matter.

F. *Dueñas* Error

Diaz contends that his constitutional rights were violated by the trial court's failure to consider his ability to pay the various imposed mandatory fines and fees. This is an argument he raised for the first time only on appeal.

In *Dueñas, supra*, 30 Cal.App.5th at page 1157, decided while this appeal was pending, the Court of Appeal held that it violates due process under the federal and state Constitutions to impose the court operations and facilities fees without first determining the convicted defendant's ability to pay them. (*Id.* at pp. 1168-1169.) In addition, "to avoid serious constitutional questions" raised by the statutory restitution scheme, the *Dueñas* court decided execution of the mandatory restitution fine must be stayed unless the trial court determines that the defendant has the ability to pay it. (*Id.* at p. 1172.) Later cases have held that, at the ability to pay hearing, the defendant bears the burden of showing his or her inability to pay, and the court "must consider all relevant factors," including "potential prison pay during the period of incarceration to be served by the defendant." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490 [remanding for an ability to pay hearing]; accord *People v. Santos* (2019) 38 Cal.App.5th 923, 934 [on remand, defendant must show inability to pay, and court may consider potential prison

16

pay]; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96 (*Kopp*), review granted Nov. 13, 2019, S257844 [same].)  There is a split of authority in the Court of Appeal as to whether *Dueñas* was correctly decided.  (E.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 322, 327-329, review granted Nov. 26, 2019, S258946 [holding that *Dueñas* was wrongly decided].)  The California Supreme Court has granted review in *Kopp* to decide whether courts must "consider a defendant's ability to pay before imposing or executing fines, fees, and assessments" and if so, "which party bears the burden of proof regarding defendant's inability to pay."  (*People v. Kopp*, review granted, Nov. 13, 2019, S257844 [2019 Cal.Lexis 8371].)

Here, however, we need not decide whether *Dueñas* was correctly decided, or whether Diaz forfeited the issue by failing to raise it first in the trial court.  As noted, the matter must in any case be remanded for resentencing.  On remand, Diaz may request a hearing and present evidence demonstrating his inability to pay the challenged fines and fees.

## III.  DISPOSITION

Defendant's convictions are affirmed.  His sentence is reversed.  The matter is remanded to the trial court with directions (1) to exercise its discretion under sections 667, subdivision (a)(1) and 1385, as amended by Senate Bill 1393; (2) to strike the enhancements previously imposed under former section 667.5, subdivision (b); (3) if requested, to consider Diaz's arguments and evidence regarding his inability to pay fines

17

and fees that otherwise would be imposed; and (4) to resentence Diaz in a manner consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

CODRINGTON
Acting P. J.

MENETREZ
J.